IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                          No. 2:20-cr-1384 RB

SKEETER MILLER,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Skeeter Miller's Motion for Sentence Reduction. (Doc. 66.) The Federal Public Defender reviewed Miller's motion and declined to file a motion on his behalf. (Doc. 67.) The United States contends Miller is ineligible for a reduction. (Doc. 71.) Having reviewed the parties' arguments, the record, and the applicable law, the Court finds Miller's sentencing range remains unchanged and his motion will be dismissed.

**I.**     **Background**

On June 16, 2020, pursuant to a plea agreement, Miller pleaded guilty to one count of possession with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(a) and 18 U.S.C. § 2, and one charge of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (*See* Docs. 32–33.) The United States Probation Office (USPO) provided a presentence report and computed a total offense level of 33.[1] (Doc. 36 ¶ 31.) Because Miller had no prior convictions, the USPO calculated a criminal history score of 0, which resulted in a criminal history category of I. (*Id.*

---

[1] Miller's base offense level was 36, but he received a two-level reduction for acceptance of responsibility and a one-level reduction for timely notifying authorities of his intent to plead guilty. (Doc. 36 ¶¶ 27, 29–30.)

¶¶ 36–37.) An offense level of 33 and criminal history category of I equated to a Guidelines range of 135 to 168 months. (*Id*. ¶ 62.) *See also* U.S.S.G. Chap. 5, Part A. On June 16, 2022, the Court sentenced Mr. Miller to 48 months incarceration. (Doc. 64.) His anticipated release date is March 18, 2026. *See* Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Sept. 29, 2024).

Since Miller was sentenced, Congress amended the Sentencing Guidelines (Amendment 821). *Compare* U.S. Sent'g Guidelines Manual § 4A1.1(d) (pre-amendment), *with* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254-01, 2023 WL 3199918 (May 3, 2023) *and* §§ 4A1.1(e), 4C1.1(a). Amendment 821 applies retroactively. *See* § 1B1.10(a)(1), (d).

Miller, acting pro se, now asks the Court to reduce his sentence under Amendment 821. (Doc. 66.) The Federal Public Defender declined to file a motion on Miller's behalf, and the United States opposes the motion. (Docs. 67; 71.)

## II. Legal Standards

A district court may modify a sentence "only pursuant to statutory authorization." *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997). Section 3582(c)(2) provides that authorization for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 17 U.S.C. § 3582(c)(2); *see also* § 1B1.10(a)(1). Section 3582 "authorize[s] only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon v. United States*, 560 U.S. 817, 826 (2010). "In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." § 1B1.10(b)(2)(C). In addition, except when the sentence was lower than the Guidelines range because the defendant provided substantial assistance to authorities, "the court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended" Guidelines range. § 1B1.10(b)(2)(A)–(B).

2

Amendment 821 may lower the Guidelines sentencing range applicable to certain defendants. Part A of Amendment 821 applies to sentencing for offenses committed "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." § 4A1.1(e). Before Amendment 821, courts assessed two "status points" to the defendant's criminal history score for such crimes. *See United States v. McDonald*, No. CR 22-1317 JB, 2024 WL 2110525, at *8 (D.N.M. May 10, 2024). Part A of Amendment 821 reduced the number of status points added depending on the defendant's criminal history points. *See* 88 Fed. Reg. 28254-01, 2023 WL 3199918; § 4A1.1(e). In the case of a person who has seven or more criminal history points, the Court may reduce the status points to one, instead of two. § 4A1.1(e). Where a person has six or fewer criminal history points, the Court may reduce the status points to zero. *Id.*

Additionally, Part B provides that courts sentencing offenders who have zero criminal history points ("zero-point offenders") may reduce the offense level by two if the defendants meet specified criteria. § 4C1.1(a); U.S. Sent'g Guidelines Manual app. C Supp. (U.S. Sent'g Comm'n 2023).

In determining whether to reduce a sentence under Amendment 821, the Court must first determine whether the defendant is eligible for a reduction by determining whether the Guidelines range calculated under Amendment 821 is lower than the Guidelines range on which the defendant's sentence was based. *United States v. C.D.*, 848 F.3d 1286, 1289 (10th Cir. 2017); § 1B1.10(b)(1). If not, a defendant is not eligible for a reduction and the Court "lacks jurisdiction over the defendant's motion and the motion must be dismissed." *C.D.*, 848 F.3d at 1289; *see also United States v. Munoz*, 682 F. App'x 635, 636 (10th Cir. 2017) (same); *United States v. Warren*, 22 F.4th 917, 926 n.6 (10th Cir. 2022) (noting that, while eligibility for a sentence reduction under

§ 3582 is a jurisdictional question under Tenth Circuit precedent, that precedent may "need to be revisited").

If the defendant is eligible for a sentence reduction, the Court must then consider whether the defendant has shown "a sentence reduction is consistent with the Commission's policy statements" and entitlement to "relief in light of the applicable sentencing factors found in" § 3553(a). *C.D.*, 848 F.3d at 1289–90; *see also* § 1B1.10(a)(1), § 3582(c)(2). The fact that a court considered the § 3553(a) factors in the initial sentencing does not preclude a court from considering them in the context of a sentence reduction motion. *Osborn*, 679 F.3d at 1196. In addition to the § 3553(a) factors, courts may consider "post-sentencing conduct," § 1B1.10, app. n.1(B)(iii), and "the benefits the defendant gained by entering a Type-C [plea] agreement when it decides whether a reduction is appropriate . . . ." *Hughes v. United States*, 584 U.S. 675, 689 (2018); *see also Osborn*, 679 F.3d at 1195.

## III. Discussion

Miller is not eligible for a sentence reduction. First, he is not eligible for Part A relief because no status points were added to his criminal history score. (*See* Doc. 36 ¶ 36.) Second, although Miller is a "zero-point" offender under Part B, he does not meet all the necessary criteria for eligibility, which include:

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
> (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
> (4) the offense did not result in death or serious bodily injury;
> (5) the instant offense of conviction is not a sex offense;
> (6) the defendant did not personally cause substantial financial hardship;
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

4

> (8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
> (9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
> (10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848 . . . ."

U.S.S.G. § 4C1.1(a). Relevant here, "the undisputed facts in the PSR . . . show that [Miller] possessed a firearm in connection with the drug offense for which he was convicted." (Doc. 71 at 7; *see also* Doc. 36 ¶¶ 9–10.) The PSR establishes that on January 12, 2020, law enforcement stopped Miller for speeding. (Doc. 36 ¶ 9.) "Miller immediately informed the officer he had a [loaded] firearm in the vehicle." (*Id.*) Later, Miller allowed officers to search the vehicle. (*Id.* ¶ 10.) Officers found "multiple rounds of live ammunition . . . , as well as four Ziploc bags filled with a clear crystalline substance consistent with methamphetamine." (*Id.*) Miller admitted that he "possessed [the] firearm . . . in furtherance of [his] narcotics trafficking activities." (*Id.* ¶ 19.)

The Court finds that these facts are sufficient to support a finding that Miller possessed the firearm in connection with the offense. As the Tenth Circuit has repeatedly found, "guns are 'tools of the trade' in the distribution of illegal drugs." *United States v. McKissick*, 204 F.3d 1282, 1293 (10th Cir. 2000) (citations omitted). In *McKissick*, the Tenth Circuit opined that "it is highly unlikely the presence of the handgun in a car containing a large amount of crack cocaine was merely coincidental." *Id.* The same is true here. "Miller possessed 1.708 kilograms of methamphetamine" on the date he was arrested, and he admitted to law enforcement that he "transport[ed] four pounds of methamphetamine . . . at least once a month" to distribute to to multiple dealers. (Doc. 36 ¶¶ 11–12.) That Miller had "ready access to the firearm" while transporting methamphetamine for distribution to drug dealers is evidence that he possessed the firearm in connection with the offense within the meaning of § 4C1.1(a). *Cf. McKissick*, 204 F.3d

5

at 1293; *see also United States v. Hargrove*, 911 F.3d 1306, 1329 (10th Cir. 2019) (noting that a weapon is possessed "in connection with the [drug] offense," when it is located near the drugs and has the "potential to be used in connection with the offense") (quotation omitted); *United States v. White*, No. 19-20027-02-DDC, 2024 WL 3455677, at *2 (D. Kan. July 18, 2024) (finding the zero-point offender defendant ineligible where he was convicted under § 924(c) for possession of a firearm in furtherance of a drug trafficking crime).

The Court finds Miller is not eligible for a sentence reduction under Part A or Part B of Amendment 821. The Court therefore lacks jurisdiction over his motion.

**IT IS THEREFORE ORDERED** that Miller's Motion for Sentence Reduction (Doc. 66) is **DISMISSED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE